# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KST DATA, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DXC TECHNOLOGY CO., et al.,<br><br>　　　　Defendants. | Case No. 2:17-cv-7927-SJO (SKx)<br><br>**ORDER DENYING MOTION TO COMPEL FURTHER DEPOSITION TESTIMONY FROM DME AND MITCHELL EVANS (ECF 130)** |

　　　Defendant-Counterclaimant Enterprise Services LLC (ES) moves to compel more deposition testimony from Mitchell Evans, both personally and as the representative for DME Products and Systems, Inc. (DME).  As the target of a federal criminal investigation, Evans has asserted his Fifth Amendment privilege against most questions posed at his personal deposition.  And because DME is effectively the alter ego of Evans, who also happens to be the sole remaining employee who can testify as DME's representative, Evans has asserted his Fifth Amendment privilege against many questions posed to him at the corporate deposition, as well.  ES contends that Evans' assertion of the privilege in both contexts is improper and seeks an order compelling him to answer questions in at least six subjects where Evans has invoked the privilege and to

authenticate more than 800 corporate documents produced by DME.  (ES 130). For the reasons below and those stated at the telephonic hearing, ES's motion is denied.

     At the outset, ES misunderstands the applicability of the Fifth Amendment privilege.  ES asserts that even if "Evans is required to testify at a deposition in this civil litigation, it will have no impact on his rights in any criminal investigation or proceedings." (ECF 130 at 7).  That is not correct.  As explained in the Court's earlier order on this subject (ECF 126), a person may assert the Fifth Amendment privilege in civil proceedings precisely because there may be adverse consequences in a different criminal proceeding.  *See United States v. Balsys*, 524 U.S. 666, 672 (1998).  To protect himself, he must invoke the privilege if he plausibly believes that his answers in the civil matter could be used in a criminal prosecution—or even lead to evidence that could be so used.  *See Doe ex rel. Rudy-Glanzer v. Glanzer,* 232 F.3d 1258, 1263 (9th Cir. 2000). Moreover, "the right to assert one's privilege against self-incrimination does not depend upon the *likelihood*, but upon the *possibility* of prosecution." *In re Master Key Litigation,* 507 F.2d 292, 293 (9th Cir. 1974) (original emphasis). An investigation is enough to create that possibility of prosecution; formal criminal charges are not required.  *See United States v. Cuthel*, 903 F2d 1381, 1384 (11th Cir. 1990).  So, for Evans' assertion of the privilege to be proper, it does not matter—and Evans certainly does not have to disclose—what stage the government's criminal investigation may be in.  So long as the possibility for prosecution looms, as it does here, Evans may choose not to provide testimony in this or any proceeding that might be potentially incriminating.

     ES also misunderstands the effect of a Fifth Amendment waiver.  Claiming that "a waiver of the Fifth Amendment privilege is limited to the particular proceeding in which the waiver occurs" (ECF 130 at 7 (quoting *United States v.*

*Licavoli*, 604 F.2d 613, 623 (9th Cir. 1979)), ES argues that Evans can be compelled to waive the privilege in this "particular proceeding" with no adverse criminal consequences in another proceeding. That too is incorrect. While the line from *Licavoli* that ES quotes is true so far as it goes, it doesn't mean what ES thinks it does. Even if Evans waived his privilege and answered ES's questions, the waiver in this case would not prevent him from re-asserting the privilege in a later criminal case. It is only in this sense that the "waiver of the Fifth Amendment privilege is limited to the particular proceeding in which the waiver occurs." But the transcript of that sworn deposition testimony could—and almost certainly would—be used against Evans in a criminal case. That is what happened in *Licavoli*: a witness waived his privilege by testifying voluntarily before a grand jury and then later asserted the privilege when he was called to testify at trial, which he had the right to do because it was a different proceeding. But the transcript of the witness's grand jury testimony was naturally used against him. *See Licavoli*, 604 F.2d at 623. The witness could not be forced to re-utter the words from his mouth, but he had to bear the full incriminating consequences of his prior sworn testimony where he had uttered the words. The same could happen to Evans.

With these legal misunderstandings cleared away, the Court cannot force Evans in either his personal or corporate capacity to answer questions in the six subjects that ES has identified as most relevant to its counterclaims. (ECF 130 at 8-10). For starters, questions aimed at discovering whether Evans has "waived" his privilege by discussing inculpatory facts with third parties undeniably skirts the line of self-incrimination. But, more importantly, those questions would provide no help to ES even if Evans answered them. As noted, waiver of the Fifth Amendment privilege does not work like the waiver of other traditional privileges. He could have told all kinds of people incriminating facts in many

different settings but that would not preclude him from staying silent in this one. So too with questions about DME's small business certifications, its statement of work with ES, ES's purchase orders to DME on the ACES Contract, Evans' knowledge of ES's small business subcontracting plan, and Evans' contacts with a former KST employee, Cheryl Thomas. Compelled answers to these topics could incriminate Evans or lead to incriminating evidence that the government could exploit in its investigation of Evans' conduct under the ACES Contract.

To be sure, Evans' answers to these questions have probative value to ES. But that is why the answers could also incriminate Evans. If testimony from Evans is relevant to ES's counterclaims because it would bear on the alleged fraud between KST and DME (indeed, there is no other way they could be relevant for ES), then it would naturally be just as relevant to the government's criminal investigation of that same fraud. As a result, the legitimacy of Evans' assertions of his Fifth Amendment privilege on the topics ES has isolated is directly proportional to the relevance they hold for ES. The same is true for Evans in his corporate capacity. Because of the small size of DME, its current defunct business status, and Evans' role as DME's only remaining viable principal who can testify as a representative, answers that Evans may give for DME will functionally be no different—and no less incriminating—than if Evans had answered them for himself. As things stand, DME and Evans are alter egos of each other for any substantive topic that could matter to ES.

Corporate document authentication, however, is a separate question. In larger or different corporate settings, more than one employee could testify as the records custodian. And the Court is aware of the potential for litigation abuse if a responding party can unilaterally choose an inappropriate corporate representative to impair a document production. With that said, this difficult outcome for ES was neither inevitable nor insoluble. If the issue had been raised

sooner, DME may have had to find or hire a different corporate representative. Or perhaps another former DME employee could have been deposed as the custodian of records to certify that the corporate documents produced by DME were created and maintained in the ordinary course of its business. But ES did not serve its subpoenas on Evans and DME until five months after the scheduling order came out in March 2018. (ECF 85, ECF 103 at 6). By the time ES filed its first motion to compel about its Fifth Amendment dispute with Evans in October 2018, the discovery cut-off was only four weeks away. (ECF 101-03). ES left no margin for normal delays and foreseeable disputes intrinsic to litigation. It also apparently failed to factor in the L.R. 37 timing requirements because the soonest ES could notice its first motion was for October 24th, just five days before the discovery cut-off. And even with the Court ruling on that motion early as it did on October 15th (ECF 126), ES had no basis to expect all compelled productions and depositions involving Evans and DME to be completed—with no last-minute disputes—in a matter of days.[1]

Yet practical solutions remain, as the Court suggested during the telephonic hearing. There is usually more than one way to authenticate a document, and the parties can fashion evidentiary stipulations to surmount any admissibility hurdles. In fact, the parties appear to be working on a partial solution that should prevent any party from weaponizing the issue. (ECF 130 at 23-24). The inadmissibility of DME corporate documents could cut both ways,

---

[1] Although neither the Federal Rules nor the Local Rules sets a deadline to file motions to compel, "broad discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Parties may not unduly delay in filing motions to compel no matter their merit. *See Gault v. Nabisco Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999). "Untimeliness is sufficient ground, standing alone, to deny a discovery motion." *Williams v. Las Vegas Metro. Police Dep't*, 2015 WL 3489553, at *1 (D. Nev. June 3, 2015). As with all decisions governed by discretion, timeliness "must be determined based on the circumstances specific to" each case. *Id*. But a "district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011).

so it is in the parties' collective interest to cooperate on admissibility and reserve their arguments about the weight of that evidence. The invocation of the Fifth Amendment privilege in the civil context also does not preclude the possibility of adverse inference instructions. *See, e.g., Mitchell v. United States*, 526 U.S. 314, 328 (1999). If after all alternatives have been exhausted but there remains a subset of documents indispensable to ES's claims that cannot be admitted at trial, ES cannot blame that outcome on how DME produced its documents under the circumstances. Evans is 68 years old, in failing health, and caring for an ailing wife with lung cancer. He and his company, who are not parties here, are still the targets of a criminal investigation. And ES waited until weeks before the discovery cut-off to litigate an issue as thorny as the Fifth Amendment privilege in civil discovery. To be clear, this is not to imply bad faith or negligence. But whatever good reasons ES may have had to raise this dispute when it did, that timing carried consequences limiting everyone's options, including the Court's.

      For these reasons, ES's motion to compel is denied without prejudice to arguments and approaches it may reserve about the admissibility of DME corporate documents at trial.

**IT IS SO ORDERED.**

October 27, 2018
DATE

STEVE KIM
U.S. MAGISTRATE JUDGE

6